# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES C. KING *on behalf of himself and all others similarly situated*,

    Plaintiff,

   v.

GLENN O. HAWBAKER, INC.,

    Defendant.

No. 4:21-CV-01033

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 27, 2022

## I. BACKGROUND

In 2021, James C. King filed a complaint in Pennsylvania state court against Glenn O. Hawbaker, Inc. ("Hawbaker"), related to allegations that Hawbaker did not pay all wages owed to King and other similarly situated employees.[1] King alleges that, from 2015 to 2018, Hawbaker failed "to pay prevailing wages to hourly employees working on prevailing wage projects by misrepresenting and misreporting" the wages paid, specifically with respect to contributions made to health and retirement plans.[2]

In these prevailing wage projects, Hawbaker was required—under the Pennsylvania Prevailing Wage Act ("PWA")—to pay its employees the same

---

[1] Doc. 1-1.

[2] *Id.* ¶ 1.

minimum wage rates, as determined by the United States Department of Labor.[3] These wages may be paid in cash wages, or through other benefits such as health insurance, paid time off, or retirement plans.[4] In its employee manual, Hawbaker promised its employees that they would be paid wages that complied with the PWA.[5]

Despite those promises, King alleges that Hawbaker "concocted a grossly exaggerated health and welfare hourly credit by including inflated health insurance costs and nonqualifying expenses in its health and welfare credit calculation."[6] Moreover, the "pension amount listed on the fringe benefit letter per employee per hour was put into on big pot and then used to fund all employees', executives', and owners' pension accounts."[7] Accordingly, the actual fringe benefits that Hawbaker paid to its employees was significantly less than it reported.[8] Hawbaker allegedly used a variety of methods to divert funds intended for individual employees to other areas,[9] meaning that Hawbaker "stole" the prevailing wage workers' retirement benefits funds and used those funds to pay benefits to others, and thereby "vastly short-changed 401(k) accounts"[10] and further paid "a fraction of the required amount in the form of health and welfare benefits for prevailing wage workers and was

---

[3]   *Id.* ¶¶ 8-9.
[4]   *Id.* ¶ 11.
[5]   *Id.* ¶¶ 15-18.
[6]   *Id.* ¶ 22.
[7]   *Id.*
[8]   *Id.* ¶¶ 23-24.
[9]   *Id.* ¶¶ 25-29.
[10]   *Id.* ¶ 30.

stealing the rest to pay for the health and welfare benefits of all of the remaining non-prevailing wage employees and executive at the company."[11]

King's complaint raises five claims. First, he alleges a breach of contract based on Hawbaker's failure to timely pay—allegedly due to the aforementioned scheme—all wages and benefits earned and required under the PWA or Davis-Bacon Act.[12] King alleges that such wages were promised in contracts and policies put forth by Hawbaker.[13] Second, King alleges a breach of contract based on Hawbaker's alleged misappropriation of retirement account funds, whereby Hawbaker diverted funds intended for individual retirement accounts, resulting in an underfunding of the retirement accounts that was contractually promised to King and other employees.[14]

Third, King alleges a violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), which requires that all wages owed to employees be paid on regular paydays designated by the employer.[15] Fourth, King seeks restitution for unpaid wages that are required by contract and under the PWA.[16] Finally, King alleges that Hawbaker unjustly enriched itself by obtaining labor from its employees while paying those employees smaller wages than they were owed.[17]

---

[11]  *Id.* ¶ 32.
[12]  *Id.* ¶¶ 56-62.
[13]  *Id.*
[14]  *Id.* ¶¶ 63-67.
[15]  *Id.* ¶¶ 68-76.
[16]  *Id.* ¶¶ 77-83.
[17]  *Id.* ¶¶ 84-88.

Shortly after the complaint was filed, Hawbaker removed this action to federal court, asserting that federal jurisdiction exists because King's claims are completely preempted by Sections 502(a) and 514(a) of the Employee Retirement Income Security Act of 1973 ("ERISA").[18] King thereafter filed this motion to remand the matter to state court.[19]

King argues that remand is appropriate because his claims are not completely preempted by ERISA.[20] Rather, King asserts, his claims derive from common law and the PWA, meaning that an independent legal duty supports his claims.[21] Hawbaker in turn contends that King's claims are all based on the existence of an ERISA plan, and the alleged theft of the funds from that plan is "the real gravamen of the Complaint," rendering those claims classic ERISA claims.[22] Hawbaker contends that King's alleged efforts to recast an ERISA claim as one arising under the PWA cannot defeat federal jurisdiction.[23]

King has filed a reply brief,[24] and this matter is now ripe for disposition. For the following reasons, the motion will be granted, and the matter remanded to state court.

---

[18]  Doc. 1.
[19]  Doc. 5.
[20]  Doc. 6 at 4-9.
[21]  *Id.*
[22]  Doc. 7 at 8. *See id.* at 9-13.
[23]  *Id.* at 13-15.
[24]  Doc. 8.

## II.    DISCUSSION

Federal law expressly provides that, if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.[25] This Court is therefore obligated to "determine whether there is subject matter jurisdiction over the plaintiff['s] . . . claims in federal court."[26] "Federal courts are courts of limited jurisdiction" and "[i]t is to be presumed that a cause lies outside this limited jurisdiction."[27] Consequently, "[t]he removing party carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court."[28]

"A cause of action does not typically 'arise under' federal law unless a federal question appears on the face of a well-pleaded complaint."[29] "There exists a narrow exception to the well-pleaded complaint rule for instances where Congress has expressed its intent to completely pre-empt a particular area of law such that any claim that falls within this area is necessarily federal in character."[30] "While other types of preemption operate only as federal defenses to state law claims, complete preemption operates to confer original federal subject matter jurisdiction

---

[25]  28 U.S.C. § 1447(c).

[26]  *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

[27]  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[28]  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (ellipsis and internal quotation marks omitted).

[29]  *N.J. Carpenters & the Trs. Thereof*, 760 F.3d at 302 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 8 (1983)).

[30]  *Id.* (internal quotation marks omitted).

notwithstanding the absence of a federal cause of action on the face of the complaint," and the United States Supreme Court has recognized that such preemption arises under ERISA's § 502(a).[31]

It is ERISA's § 502(a) that Hawbaker alleges completely preempts King's claims. "ERISA included 'expansive' preemption provisions . . . 'which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern.'"[32] "ERISA's civil enforcement mechanism, § 502(a), 'is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,' and permits removal."[33] The United States Court of Appeals for the Third Circuit has "held that a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim."[34] "Because the test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied."[35]

As to the second prong, "a legal duty is independent if it is not based on an obligation under an ERISA plan, or if it would exist whether or not an ERISA plan

---

[31] *Id.* (internal quotation marks omitted).
[32] *Id.* at 303 (quoting *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 208 (2004)).
[33] *Id.* (quoting *Davila*, 542 U.S. at 209).
[34] *Id.*
[35] *Id.*

existed."[36] "In other words, if the state law claim is not derived from, or conditioned upon the terms of an ERISA plan, and nobody needs to interpret the plan to determine whether that duty exists, then the duty is independent."[37] The Third Circuit has determined that "the obligation to pay prevailing wages [under New Jersey's version of the PWA] is an independent legal duty" and, therefore, PWA "claims are not completely preempted by ERISA § 502(a)."[38]

Here, Hawbaker agrees that a claim under the PWA would not be completely preempted by ERISA, as a PWA claim is premised upon an independent legal duty.[39] Hawbaker contends, however, that King has not brought claims under the PWA but, instead, has brought classic ERISA claims disguised as common law actions.[40] The Court disagrees.

Although, as Hawbaker argues, King's claims are typically brought pursuant to the PWA, nothing in the PWA indicates that it provides an exclusive remedy for an aggrieved party. To the contrary, Pennsylvania courts have routinely concluded that aggrieved parties may pursue remedies under the PWA, the WPCL, or under common law for causes of action such as breach of contract or unjust enrichment.[41]

---

[36]  *Id.* (internal quotation marks omitted).

[37]  *Id.* (brackets and internal quotation marks omitted).

[38]  *Id.* at 304-05.

[39]  *See* Doc. 7 at 14.

[40]  Doc. 7.

[41]  *See, e.g., Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969-70 (Pa. Super. 2009) (concluding that plaintiff properly brought claims for a breach of the WPCL, breach of contract, and unjust enrichment to recover unpaid wages owed pursuant to the PWA).

King has therefore properly brought claims under the WPCL and under common law for breach of contract or unjust enrichment, despite the fact that his claims derive from Hawbaker's alleged violation of the PWA.

Given that King has properly brought his claims for unpaid wages under the WPCL and common law, the Court concludes that those claims are supported by an independent legal duty beyond ERISA. King's breach of contract and restitution claims allege that Hawbaker signed a contract, enacted policies, and made representations that it would pay the minimum wages required by the PWA, but failed to pay the promised wages.[42] His WPCL claim likewise alleges that Hawbaker failed to pay the PWA-required wages on a timely basis,[43] and his unjust enrichment claim contends that, even if no contract existed, Hawbaker unjustly enriched itself by failing to pay the minimum wages required by the PWA.[44]

Those claims are independent of any ERISA plan. King's "claims, to be sure, are derived from an ERISA plan, and exist only because of that plan"[45] and because of Hawbaker's actions in allegedly taking money from individual retirement plans to fund the plans of other employees. However, King's claims arise not from the ERISA plan itself, but from alleged contractual promises to pay PWA-mandated

---

[42] Doc. 1-1 ¶¶ 56-67, 77-83.
[43] *Id.* ¶¶ 68-76.
[44] *Id.* ¶¶ 84-88.
[45] *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004).

wages to King and other similarly situated individuals, which militates in favor of concluding that there is an independent legal duty here.[46]

Moreover, Hawbaker's "duty to pay prevailing wages derives from the PWA, [WPCL, and its contractual obligations,] not any ERISA plan. No interpretation of any ERISA plan is necessary in order to determine whether [King was] paid prevailing wages" and Hawbaker "would be required to pay prevailing wages regardless of whether any ERISA plan existed."[47] As in *New Jersey Carpenters*, here a determination of whether Hawbaker is liable requires only a comparison of "the amount that [King and others] were paid to the amount that they were owed under the PWA," WPCL, and relevant contractual provisions.[48] "If there is a deficiency, [Hawbaker] can make it up through cash, even if the deficiency concerns the benefit prong of the PWA. No reference to any ERISA plan is necessary."[49]

In sum, although King's underlying claims do, to an extent, rely on the benefits plan and its required contributions to individual accounts, the relevant question is not whether King's claims involve a benefits plan, or even whether such a plan is integral to the claims. The question is whether the claims are supported by an independent legal duty, that is to say, whether the claims "would exist whether or

---

[46] *See id.* (finding existence of independent legal duty where "the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the [ERISA] Plan").

[47] *N.J. Carpenters & the Trs. Thereof*, 760 F.3d at 303-04.

[48] *Id.* at 304.

[49] *Id.*

not an ERISA plan existed."[50] King alleges that he was not paid the wages required under the PWA, a legal duty that exists and arises wholly separate from the requirements of the benefits plan and, accordingly, such an independent legal duty exists. Stated differently, it does not matter that the ERISA plan itself was violated—Hawbaker's alleged breach of a legal duty arises from its failure to pay the required wages under the PWA, not from any breach of the plan.

Because King's claims rest on a legal duty that is independent of any ERISA plan, his "claims are not completely preempted by ERISA § 502(a), and that section cannot provide the basis for federal court jurisdiction."[51] This Court therefore lacks jurisdiction to consider these claims, and remand to state court is appropriate, in accordance with 28 U.S.C. § 1447(c).

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that it lacks jurisdiction to consider King's claims. Consequently, King's motion to remand will be granted.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[50]   *Id.* at 303 (brackets and internal quotation marks omitted).
[51]   *Id.* at 304-05.